IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

LANCE STOUT, et al.,

        Plaintiffs,

v.                                              Case No. 15-cv-379-WPJ

UNITED STATES OF AMERICA, et al.

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court upon Defendant Individual Defendants' Second Motion to Dismiss (**Doc. 50**), filed December 4, 2015. Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is well-taken in part and not well-taken in part and therefore **GRANTED** in part and **DENIED** in part, as herein described.

### FACTUAL BACKGROUND

Given the filings to date, the Court assumes the reader's familiarity with the factual allegations underlying this action. However, the Court highlights relevant procedural developments. The Individual Defendants filed a Second Motion to Dismiss (**Doc. 50**) on November 25, 2015. Plaintiffs Lance and Barbre Stout ("Plaintiffs") filed a Response (**Doc. 59**) on January 8, 2016. The Individual Defendants filed a Reply (**Doc. 60**) on January 14, 2016. Oral argument on Defendants' motion to dismiss was held on July 7, 2016.

### LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a case

for failure to state a claim upon which relief can be granted. Rule 8(a)(2), in turn, requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *See id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## DISCUSSION

Plaintiffs' Second Amended Complaint (**Doc. 96**) brings a claim under 42 U.S.C. § 1983 against the Individual Defendants, and in the alternative, a claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Plaintiffs allege that the Individual Defendants used excessive force, failed to intervene and prevent the use of excessive force, and failed to render aid to Plaintiff. The Individual Defendants argue that Plaintiffs have failed to allege a plausible claim and that Plaintiffs have failed to allege specific acts on the part of particular individual defendants. Additionally, the Individual Defendants argue that Plaintiffs have failed to override the presumption of qualified immunity, specifically failing to allege the actions of individual defendants, allege a constitutional violation arising from the failure to intervene claim, and allege a constitutional violation arising from the failure to render care claim. The Court addresses each of these three arguments in turn.

## I. Plaintiffs Have Failed to Allege a Plausible Claim

The Individual Defendants first argue that Plaintiffs' Second Amended Complaint implicates that all of the Defendants agreed to a bizarre conspiracy theory to execute Stacey Stout ("Ms. Stout"). The Individual Defendants continue that in order to believe Plaintiffs' claims, one must believe that there was a conspiracy on the part of the Federal Task Force. They conclude that because Plaintiffs' claims are essentially fictitious, the Complaint fails to state a claim for relief.

Plaintiffs respond that common sense shows that a breakdown in gun discipline and the emotions of the moment plausibly caused the death of Ms. Stout. Plaintiffs also note that further information regarding the details of the incident are peculiarly within the possession and control of the Individual Defendants. Further, motive is not relevant, as the reasonableness of force used in seizing a person is judged on whether the force was objectively reasonable, not on the basis of the officers' motives.

The Court finds that Plaintiffs have met the *Iqbal/Twombly* standard and sufficiently alleged the plausibility that the Individual Defendants used excessive force and had a reasonable opportunity to intervene to stop the unreasonable use of deadly force by other officers.

## II. Plaintiffs Has Failed to Allege Specific Acts

The Individual Defendants next argue that Plaintiffs have failed to identify any specific actions by specific Defendants that violated Ms. Stout's constitutional rights and instead, Plaintiffs have grouped all Defendants into a "team effort" theory of liability. Additionally, Plaintiffs allege that each of the Individual Defendants should be assumed to have engaged in the exact same conduct, yet the claims against the Individual Defendants differ. The Individual Defendants point to *Stone v. Simone*, in which the plaintiff alleged specific acts but did not

identify the specific defendants who committed those acts. *See* 610 Fed. App'x 751, 754 (10th Cir. 2015) (unpublished).

Plaintiffs respond that the Tenth Circuit has held that an individualized inquiry is not necessary when "all defendants actively and jointly participated in the use of force." *Estate of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014). Given that all of the Individual Defendants are alleged to have fired into the car, it is not necessary to determine which of the officers fired the shot that resulted in Ms. Stout's death. Further, it is alleged that none of the Individual Defendants acted to end this excessive use of force. Plaintiffs argue that *Stone* involved a plaintiff who suffered distinct injuries by distinct actors, but failed to specify which actors caused him distinct injuries. By contrast, Plaintiffs allege that each of the Individual Defendants used excessive force at the same time and in the same manner.

The Court finds that Plaintiffs have sufficiently alleged specific acts taken by specific Defendants. Plaintiffs' allegations are more analogous to *Booker* than to *Stone*. In *Stone*, the plaintiff used collective terms such as officers and defendants in alleging a 42 U.S.C. § 1983 claim, even though his factual allegations alleged that defendant Simone drew his weapon, another officer fired his Taser at plaintiff, and he was subsequently assaulted a third time. *See* 610 Fed. App'x at 754. By contrast, in *Booker*, several officers restrained the plaintiff at the same time in response to alleged insubordination. The Tenth Circuit concluded that all defendants actively participated in a coordinated use of force on plaintiff, and thus, if excessive force occurred, all defendants contributed to it. *See* 745 F.3d at 422. In this case, Plaintiffs have alleged that all officers fired their weapons at Ms. Stout at around the same time, and all failed to intervene and taking steps to the prevent the use of force by other officers. The Court finds that this case involves an indivisible injury that does not require Plaintiffs to identify specific actions

4

taken by specific Defendants, such as which Defendant fired the fatal shot. Were the Court to agree with the Individual Defendants, a plaintiff would essentially be barred from ever moving beyond the motion to dismiss stage when a case involved multiple defendants and an indivisible injury.

## III. Qualified Immunity

The Individual Defendants next argue that because Plaintiffs have failed to establish that any particular Individual Defendant violated a clearly established constitutional right, Plaintiffs have failed to override the presumption of qualified immunity.

### A. Plaintiffs Have Failed to Allege a Clearly Established Violation of Constitutional Rights Related to Excessive Force

#### 1. The Seizure of Ms. Stout

First, the Individual Defendants argue that Plaintiffs must allege that (i) a seizure occurred, and that (ii) each Defendant made that seizure. Plaintiffs cannot establish that a seizure of Ms. Stout occurred because Ms. Stout was not the target of any law enforcement operation and there was no intent to seize Ms. Stout. While a seizure occurs when an unintended person is the object of the detention or taking, the detention or taking itself must be willful. *See Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). The Tenth Circuit has held that law enforcement deliberately firing at a car with knowledge that a hostage is inside does not qualify as a willful taking. *See Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000). The court found that the officers intended to restrain the vehicle and the fugitives, not the hostages. The injuries were "unfortunate but not unconstitutional 'accidental effects of otherwise lawful conduct.'" *Id.* at 1157 (citations omitted). Further, Plaintiffs have not identified which Defendants fired the shot that hit Ms. Stout and which Defendants failed to intervene or render aid. Thus, the Individual

5

Defendants are not on notice as to which claims are asserted against which Defendants.

Plaintiffs counter that the law is clear that passengers in a vehicle that is stopped are themselves seized under the meaning of the Fourth Amendment. *See Brendlin v. California*, 551 U.S. 249, 256–57 (2007). The question turns on whether a person in Ms. Stout's position would believe herself free to terminate the encounter with the police. Plaintiffs argue that Ms. Stout was not free to leave as she could not have exited the truck and freely walked away. Plaintiffs further argue that Ms. Stout's situation is unlike that of a hostage who is the unintended victim of an attempt to seize the hostage taker. While the primary focus was on Christopher Stout ("Mr. Stout"), law enforcement would have held Ms. Stout and investigated any role she may have played in Mr. Stout's flight. Plaintiffs conclude that Ms. Stout was seized for Fourth Amendment purposes when the vehicle she was in was stopped by police.

The Court finds that Plaintiffs have established that a seizure of Ms. Stout occurred. As noted by the Individual Defendants, while a seizure occurs when an unintended person is the object of the detention or taking, the detention or taking itself must be willful. *See Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). *Brower* goes on to explain that a Fourth Amendment seizure does not occur whenever the government causes termination of an individual's freedom of movement, but only when the termination occurs through means intentionally applied. *See id*. at 597–98. *Childress*, relied upon by the Individual Defendants, addressed the specific question of whether a seizure occurred. For a seizure to occur, the government must do something that gives it the opportunity to control the suspect's ability to evade capture and control. *See Brower*, 489 U.S. at 595–96. For example, in *Bella v. Chamberlain*, the Tenth Circuit held that a seizure did not occur where an officer fired shots at a helicopter, but the helicopter continued fleeing for another forty to fifty minutes, as the shots did not cause the plaintiff to submit. *See* 24 F.3d 1251,

1256 (10th Cir. 1994). *Childress* involved a high speed pursuit in which the suspect vehicle had successfully made it through eight police roadblocks while being fired upon by officers. *See* 210 F.3d at 1155–56. At the final roadblock, twenty-one rounds were fired at the van, injuring two hostages within the van. *See id*. The Tenth Circuit determined that an officer's decision to shoot at a car for the purpose of stopping the suspect's flight did not result in the sort of willful detention required by the Fourth Amendment, as "[t]he officers intended to restrain the minivan and the fugitives, not [the hostages]." *Id*. at 1157.

The Court finds a significant difference between the fleeing minivan in *Childress* and the facts of this case. As alleged by Plaintiffs, Mr. Stout's vehicle had come to a complete stop and was surrounded by the officers' vehicles. The officers subsequently exited their vehicles and drew their weapons. Mr. Stout and Ms. Stout allegedly raised their hands in surrender, and the officers subsequently fired into the vehicle. The Individual Defendants make no argument that the officers fired their weapons with the intention of stopping Mr. Stout's vehicle, as they had already restrained the vehicle by performing a tactical vehicle intervention and surrounding it with their own vehicles. The Individual Defendants argue that a seizure "occurs only if the shot strikes the fleeing person or if the shot causes the fleeing person to submit to this show of authority." *See Bella*, 24 F.3d at 1255. But this argument ignores that a person is seized when the officer terminates or restrains the freedom of movement by means of physical force *or* by show of authority. *See Brendlin v. California*, 551 U.S. 249, 254 (2007). In this case, the show of authority occurred when the officers surrounded Mr. Stout's vehicle and pointed their weapons at the vehicle. The show of authority was clearly successful because Mr. Stout and Ms. Stout raised their hands in the air to surrender. The Individual Defendants argue that there was no specific intention to seize Ms. Stout, as Mr. Stout was the target of their law enforcement operation. Yet

7

it is obvious that the officers drew their weapons and pointed them at Mr. Stout's vehicle with the willful intention of terminating the freedom of movement of the vehicle and those inside. As Plaintiffs note, to hold otherwise would be to say that Ms. Stout was free to exit the vehicle, walk past the officers with their guns drawn, and return to the motel. Thus, the Court finds that Plaintiffs have established that Ms. Stout was seized when Mr. Stout's vehicle was stopped and the officers pointed their weapons at the vehicle.

As to the argument that the Individual Defendants are not on notice as to which claims are asserted against which Defendants, the Court has already found that this case involves an indivisible injury that does not require Plaintiffs to identify specific actions taken by specific Defendants, such as which Defendant fired the fatal shot. Were the Court to agree with the Individual Defendants, a plaintiff would essentially be barred from ever moving beyond the motion to dismiss stage when a case involved multiple defendants and an indivisible injury.

### 2. Clearly Established Law

The Individual Defendants next argue that Plaintiffs cannot show that existing precedent made clear that the Individual Defendants acted unreasonably in their pursuit of a fleeing felon in a car chase. The Supreme Court has considered excessive force claims in connection with car chases on three occasions, and each time, upheld qualified immunity. *See, e.g.*, *Plumhoff v. Rikard*, 134 S. Ct. 2012 (2014). Additionally, the Individual Defendants argue that the Tenth Circuit has never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone be a basis for denying qualified immunity. *See, e.g.*, *Thomas v. Durstanti*, 607 F.3d 655 (10th Cir. 2010). Thus, the Individual Defendants did not independently violate a constitutional right that was "sufficiently clear that every reasonable official would have understood what he is doing violates that right." *Reichle v. Howards*, 132 S.

8

Ct. 2088, 2093 (2012).

Plaintiffs counter that the law concerning the use of force in the course of a seizure was clearly established before 2013. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985). In the process of seizing Ms. Stout, the Individual Defendants were not free to use unnecessary and unreasonable force. The totality of the circumstances, as set out by *Graham v. Connor*, weigh against a finding that the shooting of Ms. Stout was objectively reasonable. *See* 490 U.S. 386, 396 (1989). First, the Court is to consider the severity of the crime at issue. Ms. Stout was not charged with any crime, and Mr. Stout was wanted on charges of burglary, which Oklahoma treats as a nonviolent crime. Second, the Court is to consider whether the suspect poses an immediate threat to the safety of the officers. As pled, both Mr. Stout and Ms. Stout had raised their hands and posed no immediate threat. Finally, the Court is to consider whether the suspect is actively resisting arrest or attempting to evade arrest. While Mr. Stout had made an initial effort to flee, Plaintiffs argue that both Mr. Stout and Ms. Stout had surrendered and were not actively attempting to evade arrest. Plaintiffs argue that the law is clearly established that officers may not use deadly force to apprehend felons, even those who are fleeing. *See Garner*, 471 U.S. at 11. Additionally, the law is clearly established that the failure of an officer to prevent another officer from using excessive force violates the Constitution. *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) ("Tenth Circuit precedent clearly established before June 18, 1992 that a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983.").

The Individual Defendants reply that the proper context for this Court to evaluate is that of a vehicular pursuit of a fleeing felon. Defendants argue that Plaintiffs cannot show precedent defining clearly established law at the periphery of a car chase, and by failing to proffer an

9

alternative, Plaintiffs have failed to meet their burden. The Individual Defendants point to *Long v. Slaton*, in which the decedent got into the officer's police cruiser, placed it in reverse, and began backing it down a driveway while the officer stood next to the car and ordered the decedent to get out of the car. *See* 508 F.3d 576 (11th Cir. 2007). The Eleventh Circuit determined that the applicable law was not clearly established at the time and the decedent could have placed the car in drive and struck the officer. *See id*. at 586. The Individual Defendants also point to *Manis v. Lawson*, in which the Fifth Circuit found qualified immunity in which officers came upon a car with an unresponsive driver. *See* 585 F.3d 839, 842 (2009). After waking the driver, the driver began reaching underneath the front seat. *See id*. at 843. The officers drew their weapons and ordered him to show his hands. *See id*. When the driver appeared to retrieve an object, the officers shot and killed him. *See id*.

The Court finds that Plaintiffs have successfully overridden the presumption that each Individual Defendant is entitled to qualified immunity as to Plaintiffs' excessive force claims and finds that the law is clearly established. The Individual Defendants frame the qualified immunity question as one of the use of force involving car chases. However, Plaintiffs have pled that Mr. Stout and Ms. Stout had their hands raised and were surrounded by stopped police vehicles blocking Mr. Stout's vehicle when the alleged excessive force was used. Thus, the Court does not find the Individual Defendants' citations to cases involving vehicular pursuit of a fleeing felon to be on point. The Individual Defendants note in their Reply that specificity is essentially important in the Fourth Amendment context, citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (*per curiam*). The Individual Defendants cite to *Mullenix* and two other cases in support of their argument that the law is not clearly established. *Mullenix* involved a suspect leading police on a high-speed interstate chase that lasted eighteen minutes, during which the suspect called police

dispatch and informed them that he had a gun and would shoot at officers. *See id.* at 306. An officer shot and killed the suspect as the suspect's car drove underneath an overpass and into a spike strip. *See id.* at 307. *Scott v. Harris* involved an approximately ten-mile chase in which the suspect was injured after an officer employed a vehicular maneuver to stop the fleeing vehicle. *See* 550 U.S. 372, 375 (2007). *Plumhoff v. Rickard* involved a high-speed chase in which the suspect became cornered by police, crashed into a police cruiser, swerved toward an officer on foot, and continued to flee down a street. *See* 134 S. Ct. 2012 (2014).

As the Supreme Court explained in *Brosseau v. Haugen*, whether the right in question is clearly established depends on whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See* 543 U.S. 194, 199 (2004). While the incident in this case did involve a short police chase, the alleged excessive force as pled in Plaintiffs' Complaint occurred after Mr. Stout's vehicle was stopped and trapped by police vehicles, and after the officers had time to exit their vehicles, draw their weapons, and give instructions for Mr. Stout and Ms. Stout to put their hands up. Mr. Stout and Ms. Stout allegedly complied with these demands and the officers subsequently began firing. The Court finds that Plaintiffs have sufficiently overcome the burden of qualified immunity by alleging that Mr. Stout was charged with a nonviolent crime, officers had little reason to fear for their safety as the vehicle was stopped and both Mr. Stout and Ms. Stout had raised their hands, and neither was actively attempting to evade arrest at the time of the shooting. An objectively reasonable officer would know that an officer has no right to use deadly force against a person in a stopped vehicle surrounded by police vehicles while that person has his or her hands raised in surrender.

### B. Plaintiffs Improperly Allege a Failure to Intervene

The Individual Defendants next argue that Plaintiffs have not alleged sufficient facts

11

showing that the Individual Defendants had a realistic opportunity to prevent the harm from occurring. Because Plaintiffs pled that the alleged shooting happened *immediately* after the Defendants exited their vehicles, there was no failure to prevent excessive force. For a successful failure to intervene claim, Plaintiffs must be able to show that the defendant officer: (1) had a realistic opportunity to intervene to prevent harm from occurring; (2) that the alleged harm was caused by the actions of other officers, and (3) that the defendant officer observed or had reason to know that excessive force is being used, a citizen is unjustifiably arrested, or a constitutional violation had been committed by law enforcement. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008). The Individual Defendants argue that Plaintiffs cannot show that a realistic opportunity to intervene existed. The furthest the Tenth Circuit has gone to deny qualified immunity occurred where non-participants observed excessive force over a period of three to five minutes. *See Fogarty v. Gallegos*, 523 F.3d 1157, 1164 (10th Cir. 2008).

Plaintiffs agree that the issue in claiming that an officer failed to intervene is whether an officer had sufficient time to intercede or was capable of preventing the harm caused by another officer. Plaintiffs allege that there was such an extended barrage of gunfire that the officers emptied their clips and may have stopped and reloaded. Thus, each Individual Defendant had an opportunity not only to stop shooting, but to call for others to cease fire. Plaintiffs point to cases where the opportunity to intervene can be afforded to an officer in a relatively brief moment. *See, e.g.*, *Matta v. City of Farmington*, 791 F. Supp. 2d 1118, 1157 (D.N.M. 2011) (finding that a reasonable jury could conclude that eleven seconds elapsing while another officer pointed his gun at the plaintiffs was a realistic opportunity to intervene). The time horizon as to what constitutes an opportunity to intervene is fact specific and ultimately a question for the jury. *See Herrera v. Santa Fe. Pub. Sch.*, 956 F. Supp. 2d 1191, 1228 (D.N.M. 2013). With all officers

ready to shoot when Ms. Stout raised her hands, the Individual Defendants had an opportunity to prevent the use of deadly force, such as instructing Ms. Stout to get out of the truck. Further, the Individual Defendants had a duty to take reasonable steps to prevent the assault by the other officers from continuing. Thus, Plaintiffs conclude that there was a realistic opportunity to intervene to prevent the harm from occurring.

Defendants reply that Plaintiffs have defined the right too generally to overcome the presumption of qualified immunity. The question is not whether it was clearly established that a law enforcement official must prevent another official's use of excessive force, but whether there is an obligation to intervene while another defendant was shooting.

The Court finds that Plaintiffs have properly pled a claim of failure to intervene. The Tenth Circuit has denied qualified immunity at the summary judgment stage for an alleged excessive use of force lasting between three and five minutes, reasoning that the time period along with the officer's presence for the arrest supported a conclusion that the officer could have prevented the plaintiff's injuries. *See Fogarty v. Gallegos*, 523 F.3d 1157, 1164 (10th Cir. 2008). However, at the Motion to Dismiss stage, the Court must accept all the Complaint's factual allegations as true and evaluate whether Plaintiffs have stated a claim for relief that is plausible on its face. Plaintiffs allege that there was such an extended barrage of gunfire that the officers emptied their clips and may have stopped and reloaded. Thus, each Defendant had an opportunity not only to stop shooting themselves, but to call for others to cease fire. Additionally, Plaintiffs have alleged that the officers were in relatively close proximity to one another, as their vehicles surrounded Ms. Stout's vehicle after one of the officers performed the tactical vehicle intervention. As alleged, the excessive force used by the Individual Defendants was not short-lived or immediate. Further, seventy-five shots were fired and only two were

13

lethal: one bullet striking Ms. Stout and one bullet striking Christopher Stout. The Court finds that Plaintiffs have plausibly alleged that each Individual Defendant had an opportunity not only to stop shooting, but to call for others to cease fire.

## C. Plaintiffs Improperly Allege a Failure to Render Care

Finally, the Individual Defendants argue that Plaintiffs have failed to allege sufficient facts to bring their failure to render care claim beyond the Motion to Dismiss stage. In order to be liable, each Individual Defendant must recognize an unreasonable risk and actually intend to expose Ms. Stout to those risks without regard for the consequences. *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281–82 (10th Cir. 2003). The Individual Defendants conclude that Plaintiffs' generic allegations fail to meet this pleading standard.

Plaintiffs respond that in limited circumstances, the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals. *See DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 200 (1989). The Tenth Circuit has held that a proper danger creation claim requires Plaintiffs to demonstrate that that: "(1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking." *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003). Plaintiffs argue that their claim satisfies each of the criteria: (1) when the Individual Defendants surrounded Ms. Stout's vehicle and pointed their guns, the risk to her was markedly increased and imminent; (2) Ms. Stout was clearly identifiable as a person at risk; (3) the conduct of the Individual Defendants

14

placed Ms. Stout at the substantial risk; (4) the risk was obvious and known; (5) the Individual Defendants acted recklessly in conscious disregard when they fired upon Ms. Stout; and (6) the actions of the Individual Defendants shocked the conscience.

While originally pled as a failure to render care, both Plaintiffs and the Individual Defendants seem to have morphed the claim into a danger creation theory, with both parties citing to *Christiansen*. The Court initially finds that Plaintiffs have failed to satisfy the necessary criteria as alleged to plead a failure to render care claim. Plaintiffs allege that "[O]nce the Individual Defendants detained Ms. Stout, by way of leaving her physically incapacitated in a vehicle, the Individual Defendants had a duty to render aid, or at least not to delay others from rendering aid" (**Doc. 45**, at 11). Yet Plaintiffs have made no allegations that the Individual Defendants failed to render aid or delayed others from rendering aid. Indeed, the Second Amended Complaint states that upon information and belief, Ms. Stout was transported to a hospital where she was pronounced dead. As to the danger creation theory, the Court agrees with the Individual Defendants that *Christiansen* is inapplicable because there, the Tenth Circuit analyzed a violation of the substantive due process clause under the Fifth Amendment, while excessive force claims in the context of a seizure are analyzed under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Additionally, Plaintiffs' reliance on *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.* is inapplicable as that case was decided under the Eighth Amendment, and clearly this case does not implicate the Eighth Amendment. *See* 489 U.S. 189, 200 (1989). Thus, the Court finds that Plaintiffs' claim regarding a failure to render care should be dismissed.

## CONCLUSION

For the above stated reasons, Plaintiffs' failure to render care claim is hereby

**DISMISSED** with **PREJUDICE**. However, the Court declines to dismiss Plaintiffs' claims regarding excessive force and failure to intervene, and as such, they will remain in the litigation.

Accordingly, the Court finds that Defendants' Motion to Dismiss is well-taken in part and not well-taken in part, and therefore **GRANTED** in part and **DENIED** in part.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE